Our next case on calendar is Fox v. Miller 18-56182. Each side will have 10 minutes. Good morning. May it please the court, Irv Gross, appearing on behalf of the getter and appellant, Gerson Fox. This appeal, as your honors well know, is from a grant of a summary judgment by the bankruptcy court on the trustee's claims under 727A3 of the bankruptcy code. It's worth noting, obviously not dispositive, but it's worth noting that these are, there are two of them, these are the only remaining claims in a complaint objecting to discharge that was based on alleged fraudulent conduct. Every one of the fraud-based claims for relief, excuse me, your honors, I'm getting over something. Every one of these claims for relief, fraud-based, were either dismissed by the bankruptcy court or voluntarily dismissed by the trustee who was unable. Are you talking about claims against Fox? Yes. So we know, so let's look at, let's look at what is, we understand that, we know that in the records. So what do we have here to establish that, in fact, he should receive or he's entitled to bankruptcy when, in fact, he didn't turn over all sorts of records and he. Did not. And that, I know you claim that he's not sophisticated, but the record belies that. Well, first, with respect to the sophistication, that is one consideration in determining whether the debtor's actions were justified under the circumstances. And I, but I understand your only other defense is, is that the trustee had the obligation to provide the records or do, do the, had the obligation to make the, make the analysis and find records. And there's, there's no authority for that. Well, let me, if I may, Your Honor, let me back up and say when under 727 a three, although the word impossible does not appear in the, in the code section itself. This court in Lansdowne versus Cox and other courts for that matter has held that when interpreting 727 a three, it, the, the record keeping must be so deficient that it is impossible, impossible to ascertain the debtor's financial condition or business transactions. It is the trustee's burden to demonstrate that it was impossible for her to determine or ascertain the debtor's financial condition from what was turned over. We believe that there is, among the various material issues of fact that are in dispute, we believe there's a material issue of fact in dispute as to whether it was impossible to ascertain the debtor's, the debtor's, excuse me, financial condition. And why is that, though? Because, you know, the, the decision that was made is that it was impossible and the impossibility of it was based upon your client failing to provide the records, based upon the fact he was a trained accountant, he was also a lawyer, he didn't practice law that much, he was a very successful businessman for a substantial period of time. And that there were a number of businesses that he owned and that for, from which he obtained assets and it, she felt or the trustee felt and it was upheld that there was no basis for his not having those records, he just kept saying, I think you have to look somewhere else. The debtor had been retired and had not had an operating business for approximately 20 years before the petition date in September of 2017. He, he did not have any business from which or in connection with which business records were ordinarily. But he, he should have paid taxes. He had these, this Fox Family Trust. He had, I mean, he had a Schwab account. Why are there no records of those things? Those, whether he's running a business or not, if he's asking to have debts discharged, he needs to have some evidence of what is going on with his financial situation. And I just don't understand how, how it, first of all, how he didn't have the records, and second of all, how it didn't make it impossible once he didn't. Well, with respect to many of the records he might otherwise have had, which was in connection with the various partnerships, the SPEs that he was involved with, with Mr. Kamen, as we explained in the opening brief and in, and in reply brief, Kamen, whose discharge has been taken away and who was a fraudster, Kamen never provided Mr. Fox. But even if we put aside, I mean, the Kamen documents are a huge part of what's missing, but there are a lot of other things missing, too. I mean, your client doesn't even have tax returns. Well, I believe, Your Honor, that there was only one missing tax return for 2013, which at that point in time, he's elderly. And I understand elderly and firm is not in and of itself a defense. But the fact of the matter is he had been destroyed economically, he and his wife, by Kamen over the years. He didn't have, he was elderly. He didn't have much of the records. Okay, counsel. But he was an accountant. He was a CPA. He was an accountant. And there's no evidence that he had cognitive dysfunction. He may have, he's got a son taking care of him. His son is apparently through an auction, bought some of these assets. And I think one of the biggest problems that the trustee had was this irrevocable trust called Bear Biz. And he used to own that. So it wasn't just, it wasn't just the former, you know, he'd no longer been in the business for 20 years. There are a number of other assets that were not accounted for in papers. He just kept saying, I don't have them. He turned over 300 or 3,000 documents. And they weren't in order. She went through them. She couldn't make anything out of them. Well, actually, Your Honor, he turned over approximately 4,000 pages of documents. But more importantly, the trustee alleges in her own complaint that his former attorneys, the Buckhalter firm, had advised her that they had boxes of records that dealt with the, if I can quote here, numerous bankers' boxes of documents related to debtors' prepetition business activities, his liabilities, his estate planning activities, and potential assets. Your client's obligation to get those, that was his lawyer's, to provide them and establish the basis for his impossibility. I mean, why, you know, those records were relevant to every one of his assets. Well, as a practical matter, he, at this point in time, didn't even really know what was in those boxes. Okay, that's what he said. But he had no cognitive disability. I know that's correct, Your Honor. But at that time, by the way, just as an aside, he was at odds with the Buckhalter firm. But it really goes back to another point that Your Honor made a moment ago. And that is his obligation to turn over documents as opposed to the trustee getting them from elsewhere. We're not suggesting that the trustee was obligated to undertake her own search anywhere and everywhere for documents. But when documents are provided to the trustee by a third party, as was the case with the Bear Bins documents, the trustee got the Bear Bins documents. She happened to get them from a source other than Mr. Fox. Why really should that make any difference? She has the documents. Well, the documents, the trust produced for him in 2012 $181,656 of income. And there was nothing there that would indicate that he was no longer getting income. There was a number of things that he couldn't answer. That's correct, Your Honor. And his position was? And there's also the Fox Family Trust, the Gerson and Gertrude Trust. There was no documentation that was provided there. Those were his trusts. Those were his assets. Your Honor, he turned over, and I know this sounds like a mantra, but the fact of the matter is he turned over everything he had at the time it was requested. Not only what he had in his home, but he sourced documents from his tax preparer. He sourced documents from former attorneys. He turned over whatever he had. If the documents Your Honor is referring to were not there, frankly, they were not there. But he turned over everything he had. Do you want to save any time for rebuttal? You're basically out of time, so I'll give you a minute, but I think you better save the rest. Thank you, Your Honor. Good morning. May it please the Court. Ryan O'Day on behalf of Alyssa Miller, Chapter 7 trustee for the bankruptcy estate of Gerson Irving Fox. I'd like to first begin with what counsel left off with, and that is a plea to this court that the debtor turned over everything he had. Well, the fundamental purpose of 727A3 is to avoid the very situation we're in right now, and that is when what is turned over is grossly deficient, that's what 727A3 speaks to. A debtor has an affirmative obligation to not only preserve documents, but to keep documents. And the Ninth Circuit has been very clear, keep means keep as in a diary. If there are transactions, if there are business dealings that don't generate documents in and of themselves, it is the debtor's affirmative duty to create documents so that should they file bankruptcy, all parties in interest, the trustee, the United States trustee, and all creditors can track these transactions, go back to the root of assets or prospective assets that can be monetized or marshaled by a trustee for the collective benefit of the unsecured creditors. We don't have that here today. The issue, and I think fundamentally, is if we look at it from what is required under Rule 56, a motion was put forth that detailed 80-some undisputed facts. Of those 80 facts, only six of them were disputed, and really it was semantics, if you will, on the dispute. We have he's not a sophisticated debtor. As Your Honors have already said, he's a CPA, he's an attorney, he's an eminently successful businessman, and that's the debtor's own words. Well, not anymore, I guess. At one point in time, he was. I believe the issue here is when you look at the absolute dearth of information, again, we speak to impossibility. Impossibility, to prove it, is almost like proving the nonexistence of something. How do you prove impossibility when you can throw out a hypothetical that might show that something's going to be there? How can you distinguish the cane-a-va or the cane-a-va or cane-va decision made by the court, where the Ninth Circuit said that it was impossible to turn over the record? There's no need to distinguish it. I think one only needs to look at the facts of this case, and I say that because when we have whole categories of documents that there is nothing produced, it is categorically impossible to track the financial dealings and ascertain where assets may be within that category of documents. Number one, the way the trustee has viewed this is the lack of tax returns is almost the anchor to everything. We have 2011 and 2012 taxes that show passive income from 20-some-odd entities, bear bids and various income expense, interest expenses that are being claimed, meaning there are loans being taken out on income-producing properties as of 2012. After 2012, going forward, and I dispute counsel's representation that there's only one missing tax year. To the contrary, there has not been a tax return filed since 2012. Bankruptcy was filed September 17, 2015. So in the virtual two years leading up to petition, absolute void of information of what is being disclosed to the government, what interest, K-1s weren't turned over. And I think to that point, the big thing that jumps out in the tax returns is bear bids itself. So between 2011 and 2012, there was almost $1 million of income that he claimed that was generated by bear bids. No 2013 tax return, no 2014 tax return, no 2015 tax return. Now, addressing the dearth or the void of information on bear bids, yes, the trustee received a copy of the bear bids trust from another source besides the debtor. The trustee also received 14 assignments where assets, SPEs, single-purpose entities that held real property were put into this trust by the debtor. We received those assignments, but there is no asset list attached to this trust document. There are no bank records, no K-1s that were claimed on taxes. So when you look at the fact that we received the trust document, I think it's an overstatement to say that we got the bear bids documents. Far from it. And I think when that is looked at and your honors were to assess the complete void of information here, that is the very basis of 727A3. Now, turning next to once the trustee or a creditor has established its case, the burden then shifts to a debtor to state why these records were not kept. And to me, that's the big issue. We have a, I'll call it an anemic declaration, that goes through the bad facts involving Mr. Kamen. As your honors already pointed out, the documents generated by the Kamen-related entities are but one category of missing documents. There is nothing in the declaration that says why bear bids documents weren't kept. Really going into why tax returns weren't filed except for it was inconvenient and I was old. And I think counsels acknowledge that age in and of itself or infirmities that don't go to mental faculties aren't necessarily a defense here. And as the bankruptcy court, the trial court pointed out, we don't have a the dog ate my homework. We don't have a my house burned down and I lost the records. We have no explanation justifying the debtor's failure to keep or maintain records. Unless your honors have any questions, I believe I'm done. Thank you. A couple of points, your honors. It is, you can't slough off the Kamen documents. The Kamen documents were clearly related to the bulk of any assets that Mr. Gerson Fox owned. He hadn't worked. That isn't in the record. As a matter of fact, there had to be some documents because he claimed that he had been defrauded. And he claimed that he was defrauded because of the claims that were made against him by creditors. Where are the documents? He has no documents. That's the point. Well, actually, let me take that back. Where are those documents? The Kamen trustee, who happens to be a law partner of this trustee, had all the Kamen, presumably had all the Kamen documents. I understand your honors' position about it not being incumbent on the trustee to go out and find documents. But we're really talking about walking down the hall and finding out what the Kamen trustee, this trustee's law partner, what he has. And, indeed, I suspect, I more than suspect, that most of those documents would be related to the SPEs because he had no other business for approximately 20 years after he had retired other than funding Kamen's properties, which, frankly, some of them he didn't even have an interest in, although he was told by Kamen that he did. You're over your time again.  Thank you, Your Honor. This case is submitted.
judges: Schroeder, Friedland, Silver